JOHN H. MOREL vs. WALTER ROE.

*P. H. Morel, vs. Same.*

In an action against a bailee, the question of negligence, is a question of law for the Court to determine.

But the facts from which it is, or is not inferred must be found by the Jury.

In contracts for conveying goods on freight, there is an implied undertaking by the carrier that he has a competent knowledge of the navigation, and he will be liable for a loss occasioned by a want of such knowledge.

### By BERRIEN, Judge.

THESE actions were brought to recover the value of a quantity of cotton and rice shipped by plaintiffs on board a vessel belonging to defendant and commanded by one Wilson, to be transported to Savannah from the plantation of one or both of the plaintiffs, in the county of Bryan, upon customary freight and with the usual exception in the bills of lading, of the ordinary dangers of the river.

The two cases were by consent submitted to the Jury at the same time. In point of fact, the rice and some part of the cotton had been lost by the grounding of the vessel, while taking in the last of her cargo. It appeared from the evidence, that the landing was a good one, and that the damage arose from the vessel not laying abreast of it; but as the witness expressed it, too high up. It was in evidence, that one of the plaintiffs had said, the master had been assured that the landing was a good one, that he arrived at it for the purpose of taking in some cotton to complete his cargo, having previously on board a considerable quantity of rice, that he hauled to the landing without consulting the overseer of the plaintiff; that the tide was already turned and falling before he had done loading, and that when he had taken all the cotton on board and signed his bills of lading, he attempted

[Morel vs. Roe ]

to get under weigh, but found his vessel had grounded astern, and notwithstanding every exertion, the damage ensued.   Upon this state of facts, under the direction of the Court, the Jury on the first trials rendered verdicts for the plaintiffs.   Appeals were entered by defendant, on the trial of which the Special Jury found contrary verdicts, and now the plaintiffs' counsel moves for new trials on the following grounds :

1st. Because the defendant was a common carrier, and the loss was occasioned by a circumstance not within the exceptions attached to that character.

2d. If considered merely as a bailee, he is answerable for negligence, and the loss in this case was owing to the negligence of the master.   The case of the *Trent* navigation company vs. *Wood*, decided in the King's Bench in Easter term, 1785, is a recent affirmation in a case analogous to the present of the liability of a common carrier, subject only to the two exceptions of the act of God and the King's enemies.   In the case of *Forward* vs. *Pittard*, 1 Term Rep. 27, decided in the same Court in the succeeding year, the distinction is taken between the act of God and inevitable necessity.   "The act of God," says Lord *Mansfield*, "means something in opposition to the act of man ; for every thing is the act of God, that happens by his permission ; every thing by his knowledge.   But to prevent litigation, collusion and the necessity of going into circumstances impossible to be unraveled, the law presumes against the carrier, unless he shews it was done by the King's enemies, or by such act as could not happen by the intervention of man, as storms, lightning and tempests.   Therefore, if robbed by an armed force which it is impossible he should be prepared to resist, as in the riots of 1780, he is still liable.   The true reason is to prevent collusion, and for fear the carrier may contrive to be robbed in order to share the spoil."   The distinction is very clearly illustrated in the principal case, by fire occasioned by lightning and that produced by human

means. The effects of both may be equally inevitable, yet in the latter case the carrier is liable. As it regards the cause from whence the loss arose in the present instance, I retain the opinion expressed at the trial, and I retain this opinion, equally, whether the defendant be considered as a common carrier or as a mere bailee for hire. For in the first character, he would be exempt from liability for a loss not happening by the intervention of man, and against which human skill and prudence were not competent to guard, and in the second from a reference to the facts of the case, it is evident that the circumstances just stated, must concur in his defence. The grounding of this vessel on a concealed shoal or bank was such an occurrence as if inevitable, that is to say, not to be avoided by a competent share of skill and diligence, would certainly excuse the defendant. The Jury had therefore only to inquire under the direction of the Court, if this skill and diligence had been exercised; in other words, whether the master had, or had not been guilty of negligence. This inquiry was to be made under the direction of the Court, because the question of negligence is a question of law, although the facts from which it is, or is not to be inferred are to be found by the Jury. My opinion is that there was a gross negligence in the conduct of the master in this case in the following particulars :

1st. In not ascertaining by inquiry from the overseer Rasco, or otherwise, what was the proper position in which to place his vessel at the landing, before she actually came along side. There was certainly an implied contract on the part of the master for a competent knowledge of the navigation he had undertaken, and common prudence required, when he had got up with the landing, if he did not know its situation or the depth of the water around it, that he should have suffered his vessel to remain in the stream, until he had ascertained them by examination or inquiry. If he had done so, if he had consulted Rasco before the vessel was brought along side the landing, she would have

[Morel vs. Roe.]

been placed higher up the creek, and thus the consequences, which have resulted, would have been avoided.

2d. But if he was authorized from the assurance of the plaintiff, that the landing was a good one to lay his vessel along side, without either examination or inquiry, ought he not as a prudent man, then to have made that inquiry? The nature of his cargo especially demanded it; the vessel had already on board two thousand bushels of rough rice, and while engaged in taking in the residue of his cargo, which consisted of cotton, and more especially as before he had completed it, the tide had turned, and was falling, he ought to have ascertained if he had a sufficient depth of water, either by soundings, or a pole.

I do not think the state of the case is changed by the plaintiff's declaration to the master, that the landing was a good one. The testimony adduced at the trial affirms that declaration, and Rasco proves that the loss was incurred, not because the landing was bad, but because the vessel was not properly laid along side of it.

Let new trials be granted.